UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAJED SOUEIDAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>- against -<br><br>BREEZE-EASTERN CORPORATION, BRAD PEDERSEN, ROBERT J. KELLY, NELSON OBUS, WILLIAM M. SCHOCKLEY, and SERGE DUPUIS,<br><br>Defendants. | **OPINION AND ORDER**<br><br>16 Civ. 0015 (ER) |

Ramos, D.J.:

Plaintiff Majed Soueidan brings this putative class action against Breeze-Eastern Corporation ("Breeze-Eastern" or the "Company"), and Individual Defendants Brad Pedersen, Robert J. Kelly, Nelson Obus, William M. Schockley, and Serge Dupuis (together, "Defendants"), alleging violations of Section 14(e) of the Securities Act of 1934 and breach of fiduciary duty. Before the Court is Defendants' joint motion[1] to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons stated below, Defendants' motion is GRANTED.

---

[1] Breeze-Eastern and the Individual Defendants are represented by separate counsel.

I. **Factual Background**[2]

Breeze-Eastern is a Delaware Corporation that designs, manufactures, and sells mission equipment for specialty aerospace and defense applications.[3]  Complaint ("Compl.") ¶ 2. Plaintiff Majed Soueidan is shareholder.  *Id.* at ¶ 15.  On November 18, 2015, the Company entered into a merger agreement (the "Merger Agreement") with TransDigm Group Incorporated ("TransDigm"), a global designer, producer, and supplier of aircraft components and systems for use on commercial and military aircraft.  *Id.* at ¶¶ 3-4.  According to the Merger Agreement, the parties agreed that TransDigm would acquire all outstanding Breeze-Eastern shares by means of a cash tender offer (the "Tender Offer") of $19.61 per share (the "Offer Price"), for a total transaction value of $206 million.  *Id.* at ¶ 4.  That same day, TransDigm also entered into two separate Tender and Support Agreements ("Support Agreements")[4] with the Merger Sub, Tinicum Capital Partners II, L.P. and Wynnefield Partners Small Cap Value, L.P.  *Id.* at ¶ 5. Plaintiff alleges that as a result of the Support Agreements, TransDigm had "the power" to cause up to 5,421,284 shares (or 54.7% of all outstanding shares) to support the merger, rendering the merger a "*fait accompli*."  *Id.* at ¶ 5.  The next day, on November 19, 2015, Breeze-Eastern announced the Merger Agreement.  *Id.* at ¶ 4.

---

[2] The following facts are drawn from allegations contained in the Complaint ("Compl.") (Doc. 1), which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[3] Breeze-Eastern is a publicly-traded company.  Its shares trade on the New York Stock Exchange.  Compl. ¶ 16.

[4] The Support Agreements provided that each stockholder would "validly tender or cause to be tendered in the Offer all shares of [Breeze-Eastern's] Common Stock."  Declaration of Linda H. Martin in Support of Motion to Dismiss ("Martin Decl.") Exs. 3 & 4.  They were also subject to termination due to, among others, termination of the Merger Agreement or a change in recommendation made in accordance with the Merger Agreement.  *Id.*

Plaintiff alleges that around the time the Merger Agreement was signed, Breeze-Eastern's "prospects were excellent." *Id.* at ¶ 28. To support this proposition, Plaintiff points to Breeze-Eastern's October 28, 2015 announcement that during the first half of the fiscal year, its sales had increased by 23%, its net income had risen by $4.8 million, and its bookings had increased by 24%. *Id.* at ¶ 29. Plaintiff further claims that as a result of Breeze-Eastern's "consistently positive financial performance," its shares had risen by 73% in the prior twelve months. *Id.* at ¶ 31. On November 18, 2015, the day the Support Agreements were signed and one day before the announcement, Breeze-Eastern's stock closed at $21.00 – a 6.6% premium over the Offer Price. *Id.*

Approximately two weeks later, on December 3, 2015, Breeze-Eastern filed a Schedule 14D-9 (the "14D-9") with the Securities and Exchange Commission ("SEC"), providing the details of the Tender Offer. *Id.* at ¶ 7. The 14D-9 explained, in great detail, the process by which Breeze-Eastern's Board of Directors[5] (the "Board") explored and ultimately agreed to the sale of the Company. *Id.* at ¶ 6. Specifically, it provided that discussions about Breeze-Eastern's potential sale began in March 2011. *Id.*; Martin Decl. Ex. 1, at 8. After TransDigm became interested in purchasing the Company, TransDigm and the Board engaged in numerous conversations regarding the appropriate valuation range for the Company. *Id.* at 8-9. The 14D-9

---

[5] The Individual Defendants are all members of the Board who engaged in conversations with TransDigm during the negotiation process. Pedersen is the President and Chief Executive Officer. Compl. ¶ 17. Kelly is the Chairman of the Board and is also employed by Tinicum Capital Partners II, L.P. *Id.* at ¶ 18; Martin Decl. Ex. 1, at 9. Obus is a corporate director, and is also an officer of a Wynnefield affiliate. Compl. ¶ 19. Dupuis serves as the Treasurer and Chief Financial Officer. *Id.* at ¶ 21.

also highlighted that TransDigm expressed concern about the extent of Breeze-Eastern's environmental liabilities.[6]

Additionally, the 14D-9 also detailed the several reasons for the Board's unanimous recommendation in favor of the Tender Offer. First, Breeze-Eastern's financial projections indicated that the per share price was fair. Breeze-Eastern's management prepared financial projections for fiscal years 2016-2021 (the "Forecasts"), which contained projected financial results such as revenue, EBITDA, and net income through 2021. *Id.* at 17-19. They also included actual financial figures for fiscal year 2015 (from April 30, 2014 to March 31, 2015) and for the twelve months preceding the Tender Offer (from October 1, 2014 to September 30, 2015) (the "9/30 LTM Performance"). *Id.* Though the 9/30 LTM Performance showed a considerable increase in revenue, the 14D-9 explained that the 9/30 LTM Performance was not "necessarily indicative of the potential future financial results of the Company" for the remainder of the 2016 fiscal year for several reasons due to the "unusual timing" of shipments of certain customer orders, a favorable "product mix," and a favorable "customer mix."[7] *Id.* Therefore, both the Board and the Company's senior management team agreed that "the Forecasts, and not the 9/30 LTM Performance, was a more meaningful indicator of the Company's future results." *Id.* at 19. The Company also considered the relationship between the Offer Price and the Company's historical market prices. It found that although the Offer Price represented a

---

[6] Specifically, the 14D-9 states that TransDigm was concerned that the "ultimate cash outlay required to remediate [the Company's environmental liabilities] would exceed the Company's then-current accrual." Martin. Decl. Ex. 1, at 10.

[7] Defendants explain that the "unusual timing" reference essentially means that the profit that Breeze-Eastern would normally have "realized in the second half of the fiscal year had instead been pulled into the first half of the fiscal year, thereby making the financial results for the twelve months that included the second half of fiscal year 2015 and the first half of fiscal year 2016 uncharacteristically high." Memorandum of Law in Support of Motion to Dismiss ("Defs. Memo") (Doc. 31) at 4.

4

discount of 6.6% to the closing price on November 18, it represented a premium of "31.1% compared to the volume weighted average sales price of $14.96" over the previous six-month period, and "43.2% compared to the volume weighted average sales price of $13.69" over the previous year. *Id.* at 14.

Second, Harris Williams & Co. ("HW&C"), the financial advisor Breeze-Eastern engaged, issued a fairness opinion, in which it found that the Offer Price per share price was fair to the shareholders. *Id.* Third, the Company considered, among other things, its extensive negotiations with TransDigm, the last of which made clear that $19.61 was the highest per share price TransDigm was willing to pay. *Id.* Lastly, the Company noted that it had not received any alternative proposals from any potential buyer as of the date of the 14D-9.[8] *Id.* at 13.

On December 22, 2015, prior to the completion of the Tender Offer, Plaintiff filed a putative class action in Delaware Chancery Court (the "Delaware Complaint") against Breeze-Eastern, TransDigm, Hook Acquisition Sub Inc.,[9] and several corporate officers,[10] including the Individual Defendants. *Id.* at ¶ 9. In the Delaware Complaint, Plaintiff alleged that the corporate officers breached their fiduciary duties by (1) adopting a valuation methodology that did not accurately reflect Breeze-Eastern's financial performance (*i.e.* not relying on the 9/30 LTM

---

[8] The Merger Agreement included a "go shop" provision, allowing Breeze-Eastern to solicit, initiate, encourage and participate in discussions or negotiations for the making of alternative proposals from the date of the Merger Agreement until 11:59 P.M. on December 28, 2015. Martin Decl. Ex. 1, at 13. Though the Company contacted eighteen potential buyers, it had not received any alternative proposals as of the date of the 14D-9. *Id.* The Company stated that it would continue to engage in conversations with potential buyers until the end of the go shop period. *Id.*

[9] Hook Acquisition Sub is a wholly-owned subsidiary of TransDigm. Martin Decl. Ex. 1, at 1.

[10] The additional individual defendants were Frederick Wasserman, Charles A. Vehlow, and William T. Crobsy. *See* Martin Decl. Ex. 6.

Performance); and (2) not adequately disclosing their reasoning for the preferred valuation to the shareholders. Martin Decl. Ex. 6, at 2, 18. He argued that Breeze-Eastern's decision not to rely on the 9/30 LTM Performance undermined its statements in its 10Qs that claimed that the revenue for the 2015 fiscal year would be consistent with historical patterns, in that revenue for the second half of the fiscal year would exceed revenue in the first half. *Id.* at 9-12. Plaintiff sought a temporary injunction to allow Defendants to correct their disclosures. *Id.* at 4, 19. Without further explanation, Plaintiff alleges that the Delaware court did not grant the injunction "due primarily to [the defendants'] squeezing the transaction into the year-end holiday period." Compl. at ¶ 9. The next day, on December 23, Breeze-Eastern filed an Amended 14D-9, disclosing the Delaware Complaint and confirming the accuracy of the disclosures in the initial 14D-9. *Id.* Despite the pending lawsuit, Plaintiff ultimately tendered his shares.

On January 4, 2016, Breeze-Eastern and TransDigm announced the completion of the Tender Offer for all of Breeze-Eastern's outstanding shares. The next day, on January 5, Plaintiff voluntarily dismissed the Delaware Complaint.

## II. Procedural History

Plaintiff filed the instant action on January 4, 2016.[11] (Doc. 1) Here, as in the Delaware Complaint, Plaintiff maintained that Defendants breached their fiduciary duties for failure to adequately disclose their reasoning for not relying on the 9/30 LTM Performance. He also asserted an additional claim, alleging a violation of Section 14(e) for misrepresentations in the 14D-9. *Id.* On March 23, 2016, Defendants requested a pre-motion conference to seek leave to file a motion to dismiss. (Doc. 14) The Court granted Defendants' request and held the pre-

---

[11] Due to an error with the filing, Plaintiff refiled the Complaint on January 5, 2016. (Doc. 6).

motion conference on May 6.  At the conference, the Court granted Defendants' request for leave.  Defendants filed the instant motion on May 27, 2016.  (Doc. 29)

### III.  Legal Standards

#### A.  Rule 12(b)(6):  General Legal Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of

a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiffs' claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### B. Heightened Pleading Standard under Rule 9(b) and the PSLRA

Beyond the requirements of Rule 12(b)(6), a complaint alleging securities fraud must satisfy the heightened pleading requirements of the Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") by stating the circumstances constituting fraud with particularity. *See, e.g.*, *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319-20 (2007)). Specifically, Rule 9(b) requires that a securities fraud claim based on misstatements must identify: (1) the allegedly fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent. *See, e.g.*, *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012) (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)). Put another way, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *See U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 251-52 (S.D.N.Y. 2014). Like Rule 9(b), the PSLRA requires that securities fraud complaints "'specify' each misleading statement," set forth the reasons or factual basis for the plaintiff's belief that the statement is misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(1), (2)); *see also, e.g.*, *Slayton v. Am. Express, Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

### C. External Documents

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), *aff'd sub nom.*, *Lucas v. Icahn*, No. 14 Civ. 1906, 2015 WL 3893617 (2d Cir. June 25, 2015) (summary order); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To be incorporated into the complaint by reference, "the [c]omplaint must make a clear, definite and substantial reference to the documents." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). The Court may also "take judicial notice of public disclosure documents that must be filed with the Securities and Exchange Commission ("SEC") and documents that both 'bear on the adequacy' of SEC disclosures and are 'public disclosure documents required by law.'" *Silsby*, 17 F. Supp. 3d at 354 (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991)); *see also In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 569-70 (S.D.N.Y. 2013), *aff'd,* 566 Fed. App'x 93 (2d Cir. 2014). To their motion to dismiss, Defendants attach Breeze-Eastern's Schedule 14D-9, two Amended Schedule 14D-9 forms, Form 8-K, the Tender and Support Agreements, and Plaintiff's Delaware class action complaint. *See* Declaration of Linda H. Martin in Support of Motion to Dismiss ("Martin Decl.") (Doc. 30) Exs. 1-8.

The Complaint cites and relies on Breeze-Eastern's Schedule 14D-9 and Amended 14D-9 forms, *see* Compl. ¶¶ 7-9, and the two Tender and Support Agreements, *see* Compl. ¶ 5. The

Court can thus consider these documents.  The Court can also consider Form 8-K because it was a document filed with the SEC.  *See Silsby*, 17 F. Supp. 3d at 354.  Additionally, judicial notice may also be taken of the documents filed with the Delaware Court.  *See Global Network Comms, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").  Accordingly, the Court can consider Plaintiff's class action complaint (the "Delaware Complaint") – also incorporated by reference in the Complaint – and the Petition for Appraisal of Stock.[12]

## IV. Discussion

### A. Section 14(e) Claim

A plaintiff seeking damages under Section 14(e) must allege that (1) defendants misrepresented or omitted to state material facts in connection with the purchase or sale of a security; (2) the shareholders relied to their detriment upon the misrepresentations or omissions; and (3) the misrepresentations or omissions were made with scienter.  *In re PHLCORP Sec. Tender Offer Litig.*, 700 F. Supp. 1265, 1268 (S.D.N.Y. 1988); *see also* 15 U.S.C.A. § 78n(e).  For a misstatement or omission to qualify as material, there must be "a substantial likelihood that a reasonable shareholder would consider it important in deciding" whether to accept the tender offer.  *Prudent Real Estate Trust v. Johncamp Realty, Inc.*, 599 F.2d 1140, 1146 (2d Cir. 1979).  "[W]hether a statement is 'misleading' depends on the perspective of a reasonable investor:  The inquiry (like the one into materiality) is objective."  *Omnicare, Inc. v. Laborers Dist. Council*

---

[12] Plaintiff argues that the Court should convert Defendants' motion to dismiss to a motion for summary judgment because of their use of extrinsic documents in support of their motion.  Memorandum of Law in Opposition ("Pl. Opp.") (Doc. 33) at 8-10.  Because the Court finds that the Court can take judicial notice of Defendants' exhibits or they are incorporated by reference in the Complaint, this request is denied.

*Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015). A statement of opinion can also be misleading if it is both "objectively false and disbelieved by the defendant at the time it was expressed." *Fait v. Regions Financial Corp.*, 655 F.3d 105, 110 (2d Cir. 2011). A court's "inquiry is not aimed at determining whether 'isolated statements within a document were true,' but rather 'whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered.'" *Perrigo Co. PLC v. Mylan N.V.*, No. 15 Civ. 7341 (NRB), 2015 WL 9916726, at *4 (S.D.N.Y. Oct. 29, 2015) (citing *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002)).

Plaintiff alleges that Breeze-Eastern purposefully included misrepresentations in the 14D-9 to force its shareholders to tender their shares at an artificially deflated price. Pl. Memo at 10. Specifically, Plaintiff claims that Breeze-Eastern's statement that the Forecasts were a more meaningful indication of the Company's future results than the 9/30 LTM Performance was misleading because it did not address an inconsistency in Breeze-Eastern's 10-Q for the period ending September 30, 2015. Pl. Opp. at 4; Compl. ¶¶ 33-40, 42. He explains that on page twenty of the 10-Q, the Company stated that "[o]ver the past several years, revenues in the second half of the fiscal year exceeded revenues in the first half of the fiscal year," and that it expected that "fiscal 2016 revenues [would] be consistent with this historical pattern." *Id.* Two pages later, the Company states exactly the opposite: it did not "believe fiscal 2016 revenues [would] follow this historical pattern." *Id.* at 11. Though Plaintiff does not challenge the "veracity of the 10-Q," Plaintiff asserts that instead of addressing this inconsistency in the 14D-9, the Company chose to include the "more pessimistic analysis" in order to ensure that its shareholders would tender their shares. *Id.* at 11-12, 14 n.4.

11

Acknowledging the difference between the two statements, Defendants argue that there is no inconsistency between the 10-Q (as a whole) and the 14D-9. Defs. Memo at 11. Specifically, they claim that the statements in the 10-Q (though confusing) discuss only whether the Company's revenues in the second half would be higher than its revenue in the first half. *Id*. In contrast, the statements in the 14D-9 discuss the Forecasts of Breeze-Eastern's overall "future financial performance," which includes an assessment of more than just revenue, including profit, margin, net income, and EBITDA. *Id.* It also states that 9/30 LTM Performance was "not necessarily indicative of the potential future financial results of the Company" and lists a number of factors that produced an "exceptionally strong performance" for the Company during the first half of the 2016 fiscal year. *Id.* at 10-12; Martin Decl. Ex. 1, at 18. The 14D-9 does not address whether revenue for the second half of the 2016 fiscal year would be higher than the first half. Defendants further claim that the statement in the 14D-9 is an opinion and that Plaintiff fails to allege that Defendants did not actually believe that the Forecasts were a more meaningful indicator of the Company's future results. *Id.* at 12.

The Court agrees with Defendants. As an initial matter, Defendants' statement that the Company believed that the Forecasts were a better indicator of the Company's future progress, is a statement of opinion. Therefore, Plaintiff must have sufficiently alleged that the statement was objectively false and that Defendants did not believe that the statement was true when it was included in the 14D-9. However, Plaintiff failed to do so here.

First, Plaintiff's claim that the statement in the 14D-9 is inconsistent with the statements in the 10-Q and is thus objectively false, is unavailing. The Company's statement regarding the decision to use a particular method to gauge profitability over a five year period is different from its prediction of its revenues for a one year period. As such, the statements in the 10-Q – even if

internally inconsistent – do not render the statements in the 14D-9 misleading on their face. *See e.g.*, *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) ("The fact that [defendant] also expresses grave concerns about [the company's] ability to maintain these achievements in future years is neither inconsistent with the prior statements [of the company's success] nor false in light of the absolute dearth of contrary allegations by plaintiffs."). Second, Plaintiff has not alleged that Defendants did not actually believe the statement in the 14D-9 at the time of its filing. In fact, the 14D-9 provides a detailed explanation of the various factors that led the Company to believe that the Forecasts, and not the 9/30 LTM Performance, would serve as better indicators of the Company's future financial results and Plaintiff does not dispute the adequacy or veracity of these factors.

Accordingly, Defendants' motion to dismiss Plaintiff's Section 14(e) claim is granted.

### B. Remaining State Law Claims

Defendants have also moved to dismiss Plaintiff's state law claims. Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state and city law claims. *Kolari v. N. Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). Having dismissed Plaintiff's sole federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state and city law claims. *See* 28 U.S.C. § 1367(c)(3). Thus, they are likewise DISMISSED.

## V. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 29, and close the case.

It is SO ORDERED.

Dated:   February 15, 2017
         New York, New York

                                            _____
                                            Edgardo Ramos, U.S.D.J.